# APRIL TERM, 1897.[*]

ZIMMERMAN *v.* DETROIT SULPHITE FIBRE CO.

1. MASTER AND SERVANT—SAFE PLACE—EVIDENCE—QUESTION FOR JURY.

In an action by a mill employé for injuries sustained while oiling an overhead shaft, the plaintiff's witnesses testified that the platform on which the oiler stood was about seven feet above the floor, and consisted of a single plank 10 or 12 inches wide, supported on brackets placed at different heights and angles, so that it was inclined, and "wobbled" when in use. Defendant's witnesses testified that there were two boards, and that they were placed horizontally. *Held,* that there was evidence upon which the jury might find that the employer was negligent in the construction of the platform.

2. SAME—INSTRUCTIONS.

The court should have eliminated from the consideration of the jury all questions of negligence based upon the alleged dangerous proximity of the platform to revolving belts, and upon the alleged insufficient light, no tangible evidence having been presented by plaintiff to sustain either of these theories.

3. TRIAL—JURY—SPECIAL QUESTIONS—CONDUCT OF COUNSEL.

The defendant in an action for personal injuries, wherein the issue was alleged negligence in the construction of a platform, submitted a special question for the jury as to whether the plaintiff was hurt because he was knocked off the platform by a belt. This the court modified by adding the words, "and without other cause." The jury found a general verdict for the plaintiff, but answered the special question in the affirmative. Thereupon plaintiff's attorney discussed, in the presence of the jury, the probability of their having misunderstood the question, and asked the court to ascertain in regard thereto. The court declined to interrogate them, and discharged them from the case; but immediately thereafter

[*] Continued from Vol. 112.

permitted counsel to poll them as to the special question. Upon the poll a juror stated that he believed the question was not put to them with the words added by the court, and that the answer returned was therefore not his verdict. The jury were again sent out, and upon their return answered the question in the negative. *Held*, that it was error to permit the discussion in the presence of the jury, and then to recall them after they had been discharged, and send them back to reconsider their verdict.

Error to Wayne; Hosmer, J. Submitted April 7, 1897. Decided May 25, 1897.

Case by Johann Zimmerman against the Detroit Sulphite Fibre Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

Plaintiff had been for six and a half years employed as a laborer in the defendant's mill, and had done various kinds of work, including the oiling of machinery. In the mill was a pump situated in a well about four or five feet square, and four feet below the floor. This pump was operated by a belt running in an upright position over a wheel attached to a horizontal shaft. The shaft was about 12 feet above the floor. It was necessary to oil the shaft directly above the pump once or more each day. About seven feet above the floor was a platform, on which the oiler stood while oiling the shaft. The distance from the platform to the place of oiling is five feet. Early one Monday morning, plaintiff was directed by the foreman of the mill to oil this shaft. The platform was reached by a stepladder, though sometimes it was reached by climbing up a post. Two brackets were placed to hold the platform. Below one of the brackets was an iron steam pipe, upon which it is claimed one end of the platform rested. Plaintiff had reached the platform, and, while in the act of oiling, fell into the well, and was injured. The negligence alleged is that the defendant did not provide a proper platform; that it was not securely fastened, so that it would not be shaken by the belt playing near it;

that it was not wide enough; that it was on an angle; that it was not kept free from oil and water; that the room was not sufficiently light; that the platform was placed so near the belt that it would strike one standing on it; that plaintiff was unskilled and ignorant of the work to be done; and that he was directed to go upon this unsafe platform without instruction how to do the work or any apprisal of the danger.   The manner of the accident is described as follows:

"While standing upon said platform, without any fault on his part, plaintiff was suddenly struck by the play of the moving belt, and, as the said platform was wet and greasy and slippery, he slipped, lost his footing, and was hurled to the bottom of the well beneath the platform."

No one saw the plaintiff while going upon the platform or when he fell.   Plaintiff testified that he had never oiled this shaft before, and was ignorant of the condition of the platform; that the platform consisted of one plank 10 or 12 inches wide, and 12 or 13 feet long; that one end was lower than the other; that he thought one end was 4 or 5 feet high, and the other 7 or 8 feet high; that he thought there was a little oil on it; that it was a little slippery. His testimony as to the manner of the accident is as follows:

"I tried to reach the belt, and put oil on it (on the shaft), but the belt reached somewhere,—my body or clothes,—and throwed me down.   The belt was between the planks where I fell down."

On cross-examination he said:

"I had not oiled the pump.   I got catched some way or other, and fell down.   The plank was slippery.   I don't know whether it was oil or grease.   I don't know how big the slippery place was.   It was very slippery, but I have not seen how much it was from oil, etc.   My feet slipped down, you know, suddenly.   I fell into the hole.   My leg first got the accident, on account of the slippery part, and the belt got the next.   I slipped first. It was dark, and I was not able to see the spot where I

slipped. I have not seen, because it was dark, whether it was oil or grease on the plank, and I don't know which it was. * * * I wanted to oil, but I slipped on the belt when the belt catched me, and I fell down."

He further testified:

"Mr. Ginsley, the foreman, told me to oil everything that was necessary, and he showed me how to do it before he put me at it. He showed me this pump. I have done this myself. He told me to do the oiling, everything that was necessary, and so I did it."

One other witness for the plaintiff, Nelson Richards, testified that there was one plank; that one end might have been 10 or 12 inches higher than the other.

"One end tipped. It was not on a square level. The steam pipe kind of ran down this way, and the board was square at this end, and the board laid on that. And the plank was not fastened in these places; it was loose, and we used to shove it around when we went to get up by the pulleys to put on the belts. It wobbled in its place, and was always wet and oily."

On cross-examination this witness testified:

"I have been on this platform to help put on belts, and I never had any trouble standing on it. The mill did not run Sundays, and the planks would not be wet Monday morning before the mill started, unless from steam. There was no steam in that part of the mill Sundays, but there is when we start up. * * * There is a large skylight there on one side from the pump, and I never had any trouble in seeing when there, and I had no trouble when I got up on this plank to see to put on the belts."

The testimony on the part of defendant was to the effect that this platform consisted of two planks placed horizontally upon the brackets; that the place was sufficiently light; and that the platform had been in daily use for two years without accident.

Plaintiff recovered verdict and judgment.

*De Forest Paine*, for appellant.

*Louis J. Siemon* (*Alfred Lucking*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). It is insisted on behalf of defendant that no negligence was shown, and that the court should have so instructed the jury. It is also urged that the danger, if any there was, was apparent to the plaintiff, and that, therefore, he assumed the risk. A third contention is that, if the plaintiff stood so near the belt as to be struck by it, this was his own negligence, since there was room for him to stand without touching it.

The case is not free from difficulty. The evident theory of the declaration is that he was struck by the belt while standing upon the platform, and that this caused him to slip; and it was urged on behalf of defendant that the case made by the proofs is not the one set out in the declaration. The court, by his instructions, eliminated from the consideration of the jury the slippery condition of the platform in consequence of grease and steam, holding that these were not elements of negligence. The sole ground of negligence submitted to them was the construction of the platform. Upon this point we are unable to say that there was no testimony tending to show negligence. It is true that several witnesses, who had long been familiar with this platform, and had used it constantly, testified that it consisted of two planks placed horizontally, and that the place was well lighted. Under this testimony, there was no negligence on the part of the defendant. On the contrary, there were two witnesses who testified that it consisted of a single plank, placed at an incline, and one support at a different angle from the other. If this was so, it could not be called a safe place. We must therefore hold that there was such a conflict of evidence as will not justify us in reversing the judgment on the ground that there was no evidence of negligence.

The plaintiff's own testimony, upon which alone he can recover, leaves the cause of the accident doubtful. It is difficult to determine whether the belt struck him first, or whether he slipped, and fell against the belt. It is equally difficult to determine upon which theory the jury based their verdict. If it was upon the theory that the belt struck him first, the verdict cannot be sustained, because there was no evidence to show that the platform was too near the belt, or that there was negligence in so constructing it. It was necessary to oil the shaft. The oiler must in some way be able to reach the part to be oiled. No suggestion is made that any better or safer instrumentality than the platform could have been employed. There is no tangible evidence that it was so dark that the plaintiff could not see the belt, or that the shaft could not have been oiled with safety while standing upon the platform. It had been thus safely done for two years. This element of negligence should therefore have been eliminated from the consideration of the jury. It is quite probable that the jury made this the basis of their verdict, because it is alleged in the declaration as negligence, and also it is there alleged that the play of the moving belt struck him, and caused him to slip upon the slippery and greasy platform. If the platform was properly constructed, and plaintiff slipped in consequence of the oil or water upon it, there could have been no recovery. He had reached the platform in safety, and stood engaged in the act of oiling when he fell. Unless he fell by reason of the incline in the plank, or the fact that the supports were uneven, in consequence of which the plank tipped, he was not entitled to recover. These were the sole conditions that made the place dangerous.

At the conclusion of the evidence, counsel for defendant requested that the following special questions should be submitted to the jury:

"If the platform was not on a level, by diligence could the plaintiff see it?

"If it was not securely fastened, would he know it when he got on it?

"Was the plaintiff hurt because he slipped off the platform?

"Was he hurt because he was knocked off the platform by the belt?"

At the conclusion of the charge, these questions were fully explained to the jury by the court. Then, after further discussion by the counsel, the court, in his own handwriting, added to the third and fourth questions the words, "and without other cause." The jury returned into court with a general verdict for the plaintiff, and the first three questions answered "No," and the last "Yes." The following colloquy then took place:

"*Mr. Lucking:* If the court please, my query is with regard to the fourth question. You instructed the jury in one part of the charge that the plaintiff could not recover unless the platform was at fault.

"*Mr. Paine:* I object to any discussion in the presence of the jury.

"*Mr. Lucking:* I ask the court to ask the jury with regard to the fourth question.

"*The Court:* I decline to ask the jury anything with reference to that. You may poll the jury or not, just as you see fit.

"*Mr. Lucking:* It is all in the discretion of the court to determine whether they have thoroughly understood the fourth question.

"*Mr. Paine:* I object to the discussion and to the remarks of counsel.

"*Mr. Lucking:* We do not want any claptrap or any catch by anybody.

"*The Court:* I never had such a contingency arise before me exactly.

"*Mr. Paine:* I wish to make a remark, and have it taken down, that the jury are present during the counsel's remarks to the court.

"*Mr. Lucking:* I ask your honor to poll the jury on the fourth question.

"*The Court:* The court will do nothing of the kind. You may ask that the jury be polled as to any part of the verdict you see fit.

"*Mr. Lucking:* As to the fourth question, I want your honor to satisfy yourself that there has been no misunderstanding on the part of the jury. Now, the court does not sit here to aid counsel in trapping one side or the other. The court wants to know that the jury thoroughly understand their verdict.

"*Mr. Paine:* I wish it to appear that the counsel stands with the special questions answered in his hand, making these remarks to the judge.

"*Mr. Lucking:* I ask your honor to know positively that the jury have understood this in the same sense that the court does.

"*The Court:* You may poll the jury if you desire to poll them. I will say nothing to the jury other than what I have said,—other than the charge.

"*Mr. Paine:* I object to the court's ruling, after the remarks of the counsel in the presence of the jury, that he may poll the jury.

"*Mr. Lucking:* I ask the court to ask the jurors in connection with that question 4,—to explain question 4, and ask them if that is what they meant by it.

"*The Court:* That I decline to do. Gentlemen of the jury, you may be discharged from further consideration of the case.

"*Mr. Lucking:* I have asked that they be polled with reference to question 4, and also the other questions.

"*The Court:* The poll may be put, the jury being still here. You may poll the jury in that respect."

Upon the poll of the jury, eight answered "Yes" after the question was put to them as amended by the court and as actually submitted. The ninth juror said: "I don't think that was read as you have read it there. It is in another handwriting. I did not observe the other words." *Question:* "Then it is not your verdict?" *Answer:* "No, sir." The jury were then sent back to the jury room, and after a while returned, answering the fourth question "No."

It seems impossible to believe that the jurors did not understand the question. The last words of the judge were upon this subject, and were clear and explicit. They had no difficulty in understanding the third question, with the words added. The fourth question was in exact accord

with the allegations and theory of the declaration. In view of the character of the testimony and the claim in the declaration, we are inclined to hold that it was error to permit the discussion in the presence of the jury, and then to recall them after being discharged, and send them back to reconsider it. *Brassel* v. *Railway Co.*, 101 Mich. 11.

For this error the judgment must be reversed, and a new trial ordered.

Other errors are assigned, but, as they are not likely to arise on a new trial, we need not discuss them.

The other Justices concurred.