BOYER *v.* MALONEY.

(Decided October 21, 1927.)

*Messrs. Burch, Bacon, Denlinger & Seikel,* and *Mr. J. O. Fritz,* for plaintiff in error.

*Mr. O. D. Everhard,* and *Messrs. Weiser & Weimer,* for defendant in error.

WASHBURN, P. J. In the Common Pleas Court of Wayne county, Mr. Maloney sued Mr. Boyer to recover a commission for the sale of real estate, and Mr. Boyer, by cross-petition, sought a large amount

of damages for claimed deceit and fraud practiced by Maloney in the real estate transaction.

The case came on for trial and a jury was duly impaneled, and after the introduction of the evidence, argument of counsel, charge of the court and deliberation by the jury, said jury returned a verdict for $609 for the *defendant*.

This was on Saturday, January 22; on Monday morning, January 24, certain proceedings were had which resulted in the same jury bringing in a verdict for $609 for the *plaintiff*.

Judgment was entered on the second verdict. The defendant, Mr. Boyer, duly objected and excepted to the proceedings of January 24 and to the entry of the judgment, and seeks a reversal of the judgment in this error proceeding.

What occurred when the first verdict was returned is stated in the record by the trial judge as follows:

"Court: For the purpose of the record the court states that the court was notified that the jury was ready to report a verdict in the case on the twenty-second of January, which was Saturday, at about 12 o'clock; that at 12 o'clock the jury came into court; upon inquiry as to whether or not it had arrived at a verdict the foreman or member in charge who presided, handed to the court a sealed envelope. This was opened by the court and from there was taken a verdict which was signed by twelve of the jurors. This verdict was handed to the clerk; the clerk read the verdict in open court.

"Thereupon the court said to the jury that its labors for the day were ended and that it was sorry they were obliged to work on Saturday, that they could be excused until Monday morning, and the

court thereupon entered upon the trial docket what appears thereon, verdict for defendant for $609.

"That when the jury came into court the names of the jury were not called by the clerk; that after the reading of the verdict by the clerk, no inquiry was made by the clerk or by the court as to whether or not the verdict as read by the clerk was the verdict of the jury, and the court did not formally discharge the jury from the case."

On Monday morning, January 24, the jurors were called into court, and by direction of the trial judge said first verdict was read and the jury polled and each juror answered that said verdict was not his verdict. Thereupon the trial judge asked the jurors if they answered that said verdict was not their verdict because they had changed their minds since they had been excused on Saturday, and the jurors answered that they had agreed upon a verdict for said amount in favor of the plaintiff, but a mistake had been made by them and that they had signed the wrong verdict; that it was their intention to sign a verdict for the plaintiff, and they thought they had done so.

The trial judge then directed the jurors to take with them the verdict which had been returned on Saturday, and the other forms of verdict which they had in their prior deliberations, and to again retire in charge of the bailiff for further deliberation.

Later the jury returned with said second verdict into court, and said verdict was regularly received and also entered upon the journal, and, after the overruling of a motion to strike from the files and a motion for a new trial, judgment was entered on said second verdict.

We learn from statements of counsel, contained in the record of the proceedings, that one juror, noticing the account of the trial in a newspaper published on Saturday afternoon, called one of the attorneys for plaintiff and informed him of the mistake, who in turn called the matter to the attention of the trial judge and counsel for the defendant.

It is not denied that the jurors did agree upon a verdict for the plaintiff and that the mistake was made as stated by the jurors.

It is the claim of the defendant that the court erred in permitting the jurors to return a second verdict after the first verdict had been returned into and accepted by the court, and the jury had been allowed to separate, and in receiving and considering the statements of the jurors for the purpose of impeaching said first verdict by showing an intention different from that disclosed by the verdict.

As to the competency of said statements:

There seems to be no question that after a jury has returned a verdict, and been discharged from the case, a mistake as to the testimony, or a misapprehension of the law, or an error in computation, or an irregular or illegal method of arriving at damages, or misconduct of the jury during trial or in the jury room, cannot be shown by the statements or evidence of the jurors themselves as a ground for a new trial or for amendment of a verdict duly rendered.

However, according to some authorities, where the mistake is not connected with the consultations of the jury, or the mode by which the verdict was arrived at or made up, or to anything that occurred prior to the final agreement of the jury on the ver-

dict, but relates to a mistake in the nature of a clerical error, which happened after the deliberations of the jury had ceased and it had actually agreed upon a verdict, the statements and evidence of the jurors are competent, not as an impeachment of the verdict, but as showing that the writing is not correct and does not express the actual findings of the jury, and may be received, not for the purpose of amending the verdict, or substituting a new verdict, but solely for the purpose of setting aside the verdict.

Our Supreme Court, in the syllabus in a recent case, determined that:

"A juror cannot, by affidavit, impeach his verdict * * * by showing an intention different from that disclosed by his verdict." *Long* v. *Cassiero,* 105 Ohio St., 123, 136 N. E., 888.

The above case involved a clear impeachment of the verdict and falls within the first class of cases above referred to, but it is by no means certain that said syllabus was intended to embrace cases within the second class above referred to. However, in view of our conclusion as to the power of the court, after the jurors had been discharged, to permit them to return a second verdict and render judgment thereon, it is not necessary to determine whether or not, in the case at bar, the receiving of said statements of said jurors was in conflict with said syllabus.

Assuming that the statements of the jurors in this case were competent, we are of the opinion that the court was without power to permit the substitution of the second verdict for the first verdict. With the assent to the verdict as returned in open court, and the court's acceptance of the verdict and

discharge of the jury, the jury's function with respect to the case is closed, and it cannot be recalled to alter or amend it.

According to the record in this case, including the statement of the trial judge, the trial proceeded in the regular way and the jury's verdict was returned into court and accepted by the court, and the case ended so far as the jury was concerned.

It is stated that the jury was not "formally" discharged; but after the jury, in the presence of counsel on both sides, had returned its verdict in open court, and the verdict had been read by the clerk, and no objection made thereto, and no request to poll the jury made, and the court had entered the verdict on the trial docket, there was then no reason for the return of the jury for any further proceedings in the case. The statute, Section 11457, General Code, provides that under such circumstances the jurors "shall be discharged from the case." They were "excused" from further court duty and allowed to disperse; they were not admonished in reference to the case, as would have been required by Section 11451, if they had not been discharged; they were not ordered to return for any further proceedings in the case; and they were to report Monday morning for duty in other cases. It seems to us that there can be no question that in pursuance of said section the jury was discharged from further duties in reference to the case; the fact that the names of the jurors were not called and no inquiry made by the court or clerk as to whether the first verdict as read by the clerk was their verdict is not important; counsel for the parties were present and made no objection or suggestion

and they thereby waived the dereliction of duty of the trial judge and clerk in respect thereto.

Neither is it important that in the proceedings on Monday, January 24, the jury was polled. The jury having returned its first verdict in open court, which was accepted, and the jury having been discharged, it was too late to have a poll of the jury. *Zimmerman* v. *Detroit Sulphite Fibre Co.,* 113 Mich., 1, 71 N. W., 321; *Springfield Consolidated Ry. Co.* v. *Welsch,* 155 Ill., 511, 40 N. E., 1034.

The jury having been discharged from the case it was error for the court to reconvene the jury and permit it to return a second verdict and enter judgment thereon. The circumstances warranted the setting aside of the first verdict and the ordering of a new trial. Where the jury themselves have erred in matter of substance, as by returning a verdict for the wrong party, or for a larger or smaller sum than was intended, and thereupon have separated, the court will not amend the verdict, but will set it aside. *Little* v. *Larrabee,* 2 Greenl. (Me.), 37, 11 Am. Dec., 43.

On this point the above decision is in keeping with the great weight of the authorities.

It was error for the court, after receiving the statements of the jurors, to permit the second verdict to be returned, and to overrule the motion for a new trial based on such second verdict, and to render judgment thereon, and for such error the judgment is reversed and the cause remanded, with instructions to grant the motion for a new trial.

*Judgment reversed and cause remanded.*

FUNK and PARDEE, JJ., concur.