**GUGLIOTTA et al., Appellants and Cross–Appellees,**

**v.**

**MORANO, Appellee and Cross–Appellant.**

[Cite as *Gugliotta v. Morano,* 161 Ohio App.3d 152, 2005-Ohio-2570.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 22077 and 22095.

Decided May 25, 2005.

154

---

Joseph W. Borchelt, for appellants and cross-appellee John Gugliotta.

Theresa W. Richthammer, for appellee and cross-appellant.

Joseph Wantz, for appellant and cross-appellee Society of American Investors.

WHITMORE, Presiding Judge.

{¶ 1} Plaintiff-appellant/cross-appellee John D. Gugliotta and third-party defendant Society of American Inventors have appealed from decisions of the Summit County Court of Common Pleas that (1) granted the motion for partial summary judgment of defendant-appellee/cross-appellant, Melissa Morano, (2) denied their motions for a directed verdict and judgment notwithstanding the verdict, and (3) ordered each to pay $34,475 in attorney fees to Morano. Morano has appealed from the decision of the Summit County Court of Common Pleas that reduced her award of attorney fees. This court affirms in part, reverses in part, and remands for proceedings consistent with this opinion.

## I

{¶ 2} On May 9, 2001, Gugliotta filed suit against Morano, claiming that Morano had defamed him and caused him to suffer financial losses. The basis of the complaint was Gugliotta's contention that Morano defamed him and his company, the Society of American Inventors ("SAI"), when she filed complaints against both Gugliotta and SAI with the Akron Bar Association Board of Grievances and the Akron Area Better Business Bureau ("BBB").

{¶ 3} On August 6, 2001, Morano filed a counterclaim against Gugliotta and SAI wherein she set forth claims of breach of contract, legal malpractice, abuse of process, and violations of the Consumer Sales Practices Act ("CSPA"). In her counterclaim, Morano asserted that she had developed the idea for a solar-powered cellular telephone. She further asserted that she had retained Gugliotta and SAI to secure a patent of the solar-powered cellular telephone from the United States Patent and Trademark Office as well as to perform various business-development activities in support of her effort to launch a business centered upon her solar-powered cellular telephone. According to her counterclaim, both SAI and Gugliotta violated various laws through the course of their relationship with her and failed to perform various activities pursuant to the terms of their agreement.

{¶ 4} On September 17, 2001, Morano filed a motion for summary judgment on Gugliotta's defamation claims. Gugliotta responded and, in the alternative, requested additional time for discovery. On December 4, 2001, the trial court granted Morano's motion for summary judgment on both of the defamation claims.[1]

---

1. Gugliotta and SAI appealed the trial court's decision granting summary judgment to Morano. However, by order dated January 9, 2002, the trial court informed Gugliotta and

{¶ 5} On April 30, 2002, Gugliotta moved for summary judgment on Morano's breach-of-contract, abuse-of-process, and CSPA claims against him. On May 13, 2002, SAI moved for summary judgment on Morano's breach-of-contract and CSPA claims. On July 18, 2002, the trial court granted both motions for summary judgment as to Morano's breach-of-contract claims and denied all other portions of both motions.

{¶ 6} All of Morano's remaining claims of legal malpractice, abuse of process, and violations of the CSPA against Gugliotta, and violations of the CSPA against SAI were tried to a jury. On August 1, 2002, the jury returned verdicts for Morano on all counts.

{¶ 7} On August 12, 2002, Morano filed a motion for attorney fees, and litigation ensued regarding the motion. On April 5, 2004, the trial court granted Morano's motion and ordered that Gugliotta and SAI each pay Morano $34,378 in attorney fees. On April 23, 2004, Gugliotta filed a motion to stay execution of the judgment pending appeal, as well as a motion to set a supersedeas bond. On June 1, 2004, the trial court ordered Gugliotta to post a supersedeas bond in the amount of $63,262.50; Gugliotta posted the bond on September 10, 2004.

{¶ 8} Gugliotta and SAI have timely appealed several decisions made by the trial court through the course of litigation as well as the trial court's decision awarding attorney fees to Morano, asserting seven assignments of error. Morano has timely cross-appealed the trial court's decision reducing her award of attorney's fees, asserting two assignments of error. We have consolidated some of the assignments of error for ease of analysis.

II

Assignment of Error Number One

The trial court erred in denying Gugliotta's motion for a mistrial after the trial court permitted continued jury deliberations after discharging the jury.

{¶ 9} In their first assignment of error, Gugliotta and SAI have argued that the trial court erred when it denied their motion for a mistrial.[2] Specifically, Gugliotta/SAI have argued that the trial court erred when it allowed the jury to

SAI that the decision from which they had appealed was not a final, appealable order, and the appeal was dismissed on January 29, 2002.

2. Pursuant to our journal entry dated May 24, 2004, Gugliotta and SAI have been collectively referred to as appellants by this court. However, for ease of analysis, we will refer to Gugliotta and SAI collectively as "Gugliotta/SAI" when discussing those issues on appeal that relate to both entities. We will refer to Gugliotta alone when discussing those issues on appeal that relate exclusively to Gugliotta, and SAI alone when discussing those issues on appeal that relate exclusively to SAI.

reconvene, deliberate, and reach a verdict after it had been discharged. We agree.

{¶ 10} Typically, a motion for a mistrial in a civil case is treated as a motion for a new trial pursuant to Civ.R. 59(A), which states that a new trial may be granted to all or any of the parties based upon the "[i]rregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial." Civ.R. 59(A)(1); see *Hampton v. St. Michael Hosp.*, 8th Dist. No. 81009, 2003-Ohio-1828, 2003 WL 1848772, ¶ 29; *Toth v. Oberlin Clinic*, 9th Dist. No. 01CA007891, 2002-Ohio-2211, 2002 WL 987559, ¶ 20–23.

{¶ 11} In a civil matter such as the one at bar, this court reviews a trial court's decision whether or not to grant a motion for a mistrial under the abuse-of-discretion standard of review. *Wilson v. Gilbert* (May 23, 2001), 9th Dist. No. 20261, at 4, 2001 WL 542327, citing *Morrow v. Maglan* (1963), 174 Ohio St. 457, 460, 23 O.O.2d 109, 190 N.E.2d 276. An abuse of discretion suggests more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 12} Gugliotta/SAI first have argued that the irregularities that occurred in the instant matter precluded them from receiving a fair trial, and thus, the trial court erred when it denied their motion for a new trial. In response, Morano has argued that because there was no evidence of prejudice or taint to the jury, the irregularities of which Gugliotta/SAI complain do not merit a mistrial.

{¶ 13} It is well established in Ohio that once a jury has returned its verdict and has been discharged, it cannot be reconvened to alter or amend its verdict. *Sargent v. Ohio* (1842), 11 Ohio 472, syllabus; *Am. Express Co. v. Catlin* (October 2, 1924), 7th Dist., 1924 WL 2787, at *1, 1924 Ohio Misc. LEXIS 1503, at *2; *Boyer v. Maloney* (1927), 27 Ohio App. 52, 58, 160 N.E. 740. Furthermore, in *Myrtle v. Checker Taxi Co.* (C.A.7, 1960), 279 F.2d 930, the court held, "It is a deprivation of the right to a jury trial for the court to alter the verdict in matters of substance, or to order a jury to reassemble after discharge to consider further its verdict." (Citation omitted.) Id. at 934. The *Myrtle* court went on to say, however, that "the correction of a clerical error or a matter of form is not such a deprivation." Id., citing *Hovey v. McDonald* (1883), 109 U.S. 150, 157, 3 S.Ct. 136, 27 L.Ed. 888. The determination as to whether or not a proposed change to a jury verdict is permissible, if attempted after discharge of the jury, is a question that must be answered on a case-by-case basis based upon the facts of each particular situation. Id.

■ {¶ 14} In the instant matter, the following facts are not in dispute. Following several days of deliberations, the jury had not reached a verdict. The trial court sent the following question into the jury room: "Is there a possibility that after an additional period of time, today or tomorrow, you may reach a verdict on any count?" The jury foreperson answered "no." With the jury still in the jury room but in open court on the record, the following colloquy took place:

THE COURT: The next step is to discharge the jury and thank them. I can bring them out and do it out here, and send them back into the jury room, or I can go back into the jury room and indicate in light of the fact—

* * *

Now, if you want, I will bring them out and do this on the record, otherwise I will go in and excuse them. What is your pleasure?

[COUNSEL FOR MORANO]: I would prefer it be done on the record, Your Honor.

THE COURT: You mean out here?

[COUNSEL FOR MORANO]: Yes, Your Honor.

[COUNSEL FOR GUGLIOTTA]: I have no preference, so.

THE COURT: All right.

{¶ 15} The jury was then brought back into the courtroom, at which time the trial court stated the following:

THE COURT: The Court is in receipt of your answer to the Court's question whether or not there is a possibility that after an additional period of time, either today or tomorrow, that you may be able to reach a verdict on any count. The Court received the answer from the jury foreperson, which was no. At this time the Court does—I am going to just inquire, for the record, whether or not you are in agreement with that answer.

{¶ 16} The trial court then polled the jury, and seven jurors agreed that it was their belief that they could not reach a verdict in the time period stated by the trial court. After polling the jury, the trial court stated the following:

THE COURT: Ladies and gentlemen, I know this has been a difficult case for you. I appreciate truly the time and attention you have given it. I think you have done an absolutely exhaustive review of the evidence. You did what you were supposed to do in terms of looking at the evidence. The fact you were not able to reach a verdict does not reflect in any way on the hard work that you put into this case and I very much appreciate that. With that, then, the Court is going to discharge you. What I am going to do is have you go back in the jury room for just a second. I am going to come back for a minute or two. Now, from this point or up to this point I have been telling you you

can't talk about this case with anyone. From this point on, if you want to talk to anyone about this case, you are free to do so, but you are not compelled to. * * * If you don't want to talk to [the attorneys], you don't have to. If you would like to talk to them, you can. Likewise, you can talk to anyone you want to about the case. That's completely your decision. With that, then, I would ask you to return to the jury room and I will dismiss you very shortly.

{¶ 17} A short recess was then taken at which time the judge went to the jury room without counsel or the court reporter present. After the recess, the judge returned to the courtroom and informed the parties that it had been her intent to discharge the jury when she went to the jury room. However, according to the trial judge, when she entered the jury room, the jury foreperson told her that the jury may have misunderstood the question that was asked by the court. Specifically, the trial judge stated that the jury foreperson told her that although the jury felt it could not reach a verdict in the time period stated by the trial court, the jury did feel that it could reach a verdict with further deliberations beyond the time period prescribed by the trial judge.

{¶ 18} After the trial judge informed the parties and counsel of what had transpired in the jury room, she then repolled the jury, asking each juror if he or she could reach a verdict "today, tomorrow, or beyond tomorrow." Each juror said "yes." The trial judge then told the jury to continue deliberations, and she gave them the standard admonitions.

{¶ 19} The jury was then removed from the courtroom, at which time Gugliotta/SAI objected to the trial court's decision to reconvene the jury and moved for a mistrial. A hearing on the motion was held the next morning. At the hearing, Gugliotta/SAI argued that a mistrial should be declared because the jury had been discharged; thus, its ability to deliberate and reach a verdict was terminated. Gugliotta/SAI also argued that the jury was tainted by the ex parte communications with the trial judge in the jury room. Morano opposed the motion, arguing that the jury had not been discharged and that there had been no taint of the jury deliberations by the trial judge.

{¶ 20} Following the arguments presented by each party, the trial judge called each juror into the courtroom individually and asked each juror what he or she remembered the trial judge saying while the trial judge was in the jury room outside the presence of counsel and the court reporter the previous day. The trial judge also asked each juror whether anything the judge said in the jury room outside the presence of counsel or the court reporter had prejudiced that particular juror's ability to deliberate or form an opinion of the case.

{¶ 21} During this inquiry into potential prejudice, one juror stated that he remembered the judge asking the jury what it "thought of the case." The juror also said that the judge "said [the jury was] dismissed, and then [the jurors]

began asking questions and [the judge] answered [the jurors'] questions." A second juror said that her emotional state had changed when the judge told the jury it was dismissed. The second juror then started to cry on the witness stand.[3]

{¶ 22} After the trial judge had inquired of all of the jurors, she determined that her ex parte communications with the jury the previous day had not prejudiced the jury. Because the trial judge had already determined that she had not discharged the jury and had then found that the jury had not been prejudiced by her ex parte communications, the trial judge stated the standard admonishments and told the jury that it would reconvene and continue deliberations the next day. Following deliberations the next day, the jury returned verdicts adverse to Gugliotta and SAI on all counts. Morano then moved for attorney fees and was ultimately awarded a total of $68,950 in attorney fees.

{¶ 23} Holding fast to the long-established precedent of *Sargent, Am. Express, Boyer,* and *Checker Taxi,* supra, we find it only logical that if a jury cannot be reconvened to alter a verdict or even memorialize a verdict upon which all of the jurors agree, then a jury that has not reached a verdict certainly cannot be reconvened to continue deliberations and attempt to reach a verdict. The potential for prejudice, whether realized by the jury or not, is too great. To adopt the argument that prejudice determines whether or not a jury can be reconvened would set the stage for limitless inquests regarding a trial court's discharge, or failure to discharge, a jury. Once a party, attorney, or judge heard a whisper that a discharged jury had been close to a verdict, motions to reconvene and hearings to assess whether or not prejudice had occurred would ensue.

{¶ 24} With this rule in mind, we turn to the instant matter. First, we take note of the trial judge's conduct upon entering the jury room. Her question to the jury "What did you think of the case?" is patently inconsistent with the notion that the jury was still convened and deliberating. Trial judges are precluded from asking the jury its opinion of a case while the jury is still empaneled and engaged in deliberations.

{¶ 25} Next, we note the trial judge's comment "I never said the word 'discharged' on the record, nor did you hear that from any of the jurors who testified in this case." We have already recited that portion of the record where the trial court clearly used the word "discharged" in reference to the jury and on the record.

---

3. We note that the second juror assured the judge that she was able to continue deliberations.

{¶ 26} Finally, we note that the trial court asked all the parties if they wanted the jury to be discharged in court on the record or in the jury room. Morano requested that discharge occur in court on the record; Gugliotta had no preference. The trial court then brought the jury into the courtroom and, among other things, lifted the admonishment and said, "I am going to discharge you." The record simply does not support the trial judge's contention that she was going to discharge the jury in the jury room.

{¶ 27} Based on the foregoing, this court finds that the jury in the instant matter was discharged in open court and without reaching a verdict. As a result, the jury was precluded from reconvening to continue deliberations, and all of the verdicts reached in the instant matter are vacated. It follows that the trial court abused its discretion when it denied Gugliotta/SAI's motion for a mistrial. Appellant's first assignment of error has merit.

### Assignment of Error Number Two

The trial court erred to the prejudice of Gugliotta in denying Gugliotta's motion [for] a directed verdict on [Morano's] Consumer Sales Practices Act claim.

### Assignment of Error Number Three

The trial court erred to the prejudice of Gugliotta in denying Gugliotta's motion for a directed verdict on [Morano's] abuse of process claims.

{¶ 28} In their second assignment of error, Gugliotta/SAI have argued that the trial court erred when it denied their motion for a directed verdict on Morano's CSPA claims. Specifically, Gugliotta/SAI have argued, inter alia, that because Morano testified that she considered her transaction with Gugliotta/SAI to be a business transaction, Gugliotta/SAI was exempt from liability pursuant to the statute.

{¶ 29} In his third assignment of error, Gugliotta has argued that the trial court erred when it denied his motion for a directed verdict on Morano's abuse-of-process claims. Specifically, Gugliotta has argued that because Morano alleged in her original complaint that Gugliotta lacked probable cause to initiate his defamation lawsuit against her, her claim of abuse of process must fail as a matter of law.

{¶ 30} This court conducts a de novo review of a trial court's decision denying a motion for directed verdict. *Whitaker v. M.T. Automotive, Inc.* 9th Dist. No. 21836, 2004-Ohio-7166, 2004 WL 3017229, at ¶ 32. A motion for a directed verdict challenges the sufficiency of the evidence presented at trial. Id. The motion does not specifically challenge the weight of the evidence or the

credibility of witnesses. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252. If substantial evidence was presented at trial that would lead reasonable minds to different conclusions, the trial court must deny a motion for a directed verdict. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334. The party opposing the motion, however, bears the burden of producing evidence that speaks directly to all of the essential elements of the claim. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141. If the nonmoving party fails to meet this burden, then the motion for a directed verdict should be granted. Id. With these standards in mind, we will examine each of appellant's claims separately.

*CSPA–General Provisions*

{¶ 31} In the instant matter, Morano brought separate claims against Gugliotta and SAI for violations of the general provisions of the CSPA as well as the invention-development-services provisions of the CSPA. Based on the language of the statute, we must address Morano's claims pursuant to the general provisions and the invention-development-services provisions of the statute separately.

{¶ 32} Gugliotta/SAI first have argued that they were entitled to a directed verdict on Moran's claims pursuant to the general provisions of the CSPA because their transaction with Morano was not a consumer transaction. Therefore, their argument continues, the CSPA was inapplicable to the instant matter. In response, Morano has argued that she, Gugliotta, and SAI were engaged in a consumer transaction, and thus she did have a remedy at law pursuant to the CSPA.

{¶ 33} The general provisions of the CSPA prohibit unfair, deceptive, or unconscionable acts or practices in consumer transactions. R.C. 1345.02; R.C. 1345.03. Consumer transactions are defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A).

{¶ 34} Morano testified to the following on cross-examination:

[COUNSEL FOR GUGLIOTTA]: You were seeking a patent for purely business reasons, correct?

MORANO: Correct.

* * *

[COUNSEL FOR GUGLIOTTA]: * * * [B]ut it wasn't a consumer transaction, it was a business venture, correct?

MORANO: Yes.

{¶ 35} The Sixth Appellate District has wrestled with the same question now before this court. *Tomes v. George Ballas Leasing* (Sept. 30, 1986), 6th Dist. No. L–85–359, 1986 WL 11420, 1986 Ohio App. LEXIS 8463. In *Tomes,* the parties disagreed as to whether or not they had engaged in a consumer transaction. Id., 1986 WL 11420, at *2, 1986 Ohio App. LEXIS 8463, at *5. In response, the court announced its general rule that the determination as to whether or not a consumer transaction has been entered into between the parties "will be based upon the objective manifestations of the parties, as set forth by the totality of the circumstances surrounding the transactions" at the time the parties entered into a binding agreement. Id., syllabus. We agree and find that this sound logic results in fundamental fairness while operating in accordance with the spirit of the CSPA.

{¶ 36} Applying the *Tomes* rule to the instant matter, we need go no further than Morano's sworn testimony at trial to conclude that she considered her relationship with Gugliotta/SAI a business relationship. And we need go no further than Gugliotta/SAI's exhibits at trial—namely, the substantial number of "business development" documents prepared for Morano during the course of their relationship—to determine that Gugliotta/SAI considered their relationship with Morano a business relationship. As a result, reasonable minds could come to but one conclusion—namely, that Morano's claims against Gugliotta/SAI pursuant to the general provisions of the CSPA must fail.

*CSPA Invention–Development–Services Provisions*

{¶ 37} Gugliotta/SAI next have argued that they were entitled to a directed verdict on Morano's claims pursuant to the invention-development-services provisions of the CSPA because Gugliotta was acting in his official capacity as an attorney during the course of their relationship with Morano. In response, Morano has argued that the determination as to whether or not Gugliotta was acting in his official capacity as an attorney is a factual determination that was properly answered by the jury. She has also argued that the contract she entered into with Gugliotta and SAI did not comply with R.C. 1345.63.

{¶ 38} The CSPA defines invention development services as

any act, including the evaluation, perfecting, marketing, brokering, or promoting of an invention, that is done by or for an invention developer in connection with the procurement or attempted procurement by the invention developer of a licensee or buyer of an intellectual property right in the invention.

R.C. 1345.61(C).

{¶ 39} An invention developer is a person who either performs or offers to perform invention-development services for a customer. R.C. 1345.61(D). How-

ever, an attorney "acting within the scope of [his] professional license" is exempt from liability pursuant to the statute. R.C. 1345.61(D)(3).

{¶ 40} The invention-development-services provisions of the CSPA also set forth specific statements and disclosures that must be present on the face of any contract for invention-development services. See R.C. 1345.61 through 1345.68. The statute requires that every contract for invention-development services include a "conspicuous and legible cover sheet" that includes the following language:

The purchase of invention development services is a high risk expenditure. The performance of the services detailed in the contract provides no guarantee or promise of profits, or that your invention or idea will be purchased by a manufacturer. Only a very small percentage of inventions have a chance of receiving profits. An invention developer can assist you in your efforts.

R.C. 1345.63(A).

{¶ 41} The record reveals that a copy of the contract executed by Gugliotta, SAI, and Morano was admitted into evidence at trial as Plaintiff's Exhibit 10. Our review of the contract reveals that it does not include the requisite language of R.C. 1345.63(A). Furthermore, Gugliotta testified at trial that the contract did not have the exact language required by R.C. 1345.63(A). Thus, it is clear that Morano did provide sufficient evidence that both Gugliotta and SAI violated R.C. 1345.63 of the invention-development-services provisions of the CSPA.

{¶ 42} We realize that the CSPA exempts from liability attorneys engaged in the practice of law. However, we find that merely holding a license to practice law cannot exculpate an attorney from liability. Instead, it must be determined whether or not the attorney was actually engaged in the practice of law when the conduct giving rise to the CSPA claim occurred. That question is certainly best answered by a fact finder such as a jury.

{¶ 43} In the instant matter, the jury was presented with testimony on this question from both Gugliotta and Morano. Morano testified that she hired Gugliotta to perform both legal services and business-development services in relation to the use of a solar-powered cellular telephone. Gugliotta testified that on various occasions, he signed letters and communications to Morano as an engineer, and on other occasions, he signed letters and communications to Morano as an attorney.

{¶ 44} It is well settled that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. Furthermore, "[t]his Court gives deference to the findings of the jury as they are in the best position to determine the credibility of witnesses

during trial." *State v. Aaron,* 9th Dist. No. 21434, 2003-Ohio-5159, 2003 WL 22232343, at ¶ 17. Even though some of the testimony presented by Morano and Gugliotta was in conflict, "[t]his Court will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other." *State v. Daniels,* 9th Dist. No. 03CA008261, 2004-Ohio-828, 2004 WL 344128, at ¶ 17, citing *State v. Gilliam* (Aug. 12, 1998), 9th Dist. No. 97CA006757, 1998 WL 487085, at 4.

{¶ 45} Based on the foregoing, this court finds that Morano presented sufficient evidence at trial that Gugliotta was not always engaged in the practice of law during the course of Morano's relationship with him and SAI. Therefore, we conclude that the trial court did not err when it denied Gugliotta's motion for a directed verdict on Morano's claims pursuant to the invention-development-services provisions of the CSPA.

{¶ 46} In sum, Gugliotta's second assignment of error has merit, as it attacks the trial court's denial of Gugliotta/SAI's motion for a directed verdict on Morano's claims against Gugliotta/SAI for violations of the general provisions of the CSPA. Gugliotta's second assignment of error lacks merit, as it attacks the trial court's denial of Gugliotta/SAI's motion for a directed verdict on Morano's claims against Gugliotta/SAI for violations of the invention-development-services provisions of the CSPA.

*Abuse of Process*

{¶ 47} To prevail on a claim alleging abuse of process, the moving party must show (1) that a legal proceeding was properly initiated and supported by probable cause, (2) that same legal proceeding was perverted by the nonmoving party in order to achieve "an ulterior motive for which it was not designed," and (3) that the moving party has incurred damages as a result of the nonmoving party's wrongful use of process. *Levey & Co. v. Oravecz,* 9th Dist. No. 21768, 2004-Ohio-3418, 2004 WL 1465635, ¶ 8, citing *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 298, 626 N.E.2d 115.

{¶ 48} A related but separate tort is that of malicious prosecution. The elements of a claim of malicious civil prosecution are (1) malicious institution of prior proceedings against the plaintiff by defendant, (2) lack of probable cause for the filing of the prior lawsuit, (3) termination of the prior proceedings in plaintiff's favor, and (4) seizure of plaintiff's person or property during the course of the prior proceedings. *Yaklevich,* 68 Ohio St.3d at 297, 626 N.E.2d 115.

{¶ 49} Gugliotta has argued that Morano's claims of abuse of process must fail as a matter of law because Gugliotta did not pervert the civil litigation process. In response, Morano has argued that "Gugliotta[ ] threatened litigation to coerce Morano to retract her complaint[s]" to the board and the BBB.

{¶ 50} This court has previously held that "[a]buse of process does not lie for the wrongful bringing of an action, but for the improper use, or 'abuse' of process" once a proper claim has been commenced. (Emphasis omitted.) *Miller–Wagenknecht v. Munroe Falls,* (Dec. 5, 2001), 9th Dist. No. 20324, 2001 WL 1545626, at 8–9, quoting *Kremer v. Cox* (1996), 114 Ohio App.3d 41, 51–52, 682 N.E.2d 1006. Thus, Morano's own argument that Gugliotta used the threat of litigation as a tool of coercion serves to defeat her claim of abuse of process.

{¶ 51} Furthermore, the timing of Morano's abuse-of-process counterclaim is problematic because "[i]n a typical case, the abuse of process * * * arises from events that occur during the course of the underlying litigation." *Yaklevich,* 68 Ohio St.3d at 299, 626 N.E.2d 115. The record reveals that the following events occurred in relation to the defamation litigation: (1) Gugliotta filed his lawsuit; (2) proceeding pro se, Morano answered the lawsuit by writing a letter to the judge; (3) Gugliotta moved for default, arguing that Morano's letter to the judge, which the trial court construed as an answer, was not timely filed; and (4) Morano, no longer proceeding pro se, filed an amended answer and counterclaim alleging that Gugliotta/SAI had engaged in abuse of process. Thus, it is clear that there had been little or no "process" in the defamation litigation, and Morano's counterclaim for abuse of process runs afoul of *Yaklevich.*

{¶ 52} Based on the foregoing, we find that Morano's counterclaim of abuse of process fails as a matter of law. As a result, the trial court erred when it denied Gugliotta's motion for a directed verdict on that counterclaim. Gugliotta's third assignment of error has merit.

### Assignment of Error Number Four

The trial court erred in denying Gugliotta's motion for a remittitur and/or motion for new trial on [Morano's] abuse of process claims.

{¶ 53} In his fourth assignment of error, Gugliotta has argued that the trial court erred when it denied his motion for remittitur or a new trial on Morano's counterclaim of abuse of process. Specifically, Gugliotta has argued that the jury's monetary award stemming from Morano's successful abuse-of-process claim was excessive and not supported by the evidence presented at trial.

{¶ 54} Given our disposition of Gugliotta's first and third assignments of error, namely that Gugliotta was entitled to a directed verdict on Morano's abuse-of-process claim and that the jury's verdict on it is vacated, it follows that the monetary award to Morano as a result of her abuse-of-process claim is vacated as well. We decline to address Gugliotta's motion for remittitur or a new trial on Morano's abuse-of-process claim. See App.R. 12(A)(1)(c).

### Assignment of Error Number Five

The trial court erred in denying Gugliotta's motion for judgment notwithstanding the verdict or, in the alternative, motion for a new trial on [Morano's] Consumer Sales Practices Act claims.

{¶ 55} In their fifth assignment of error, Gugliotta/SAI have argued that the trial court erred when it denied their motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial, on Morano's CSPA claims. Specifically, Gugliotta/SAI have argued that Morano's sworn testimony that her transaction with Gugliotta/SAI was a business transaction entitled them to judgment notwithstanding the verdict on all of her CSPA claims.

{¶ 56} An appellate court applies the same standard of review when evaluating the denial of either a motion for directed verdict or a motion for judgment notwithstanding the verdict. *Oravecz,* 9th Dist. No. 21768, 2004-Ohio-3418, 2004 WL 1465635, ¶ 6, citing *Rondy, Inc. v. Goodyear Tire & Rubber Co.,* 9th Dist. No. 21608, 2004-Ohio-835, 2004 WL 344157, at ¶ 5. Both motions assess the sufficiency of the evidence on a claim without weighing the evidence or credibility of witnesses, and thus both involve a question of law that must be reviewed de novo. Id. at ¶ 5, citing *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 257, 741 N.E.2d 155; *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 423 N.E.2d 467; *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 430 N.E.2d 935.

{¶ 57} Having already determined that Gugliotta and SAI were entitled to a directed verdict on Morano's counterclaim that they violated the general provisions of the CSPA, we hold that both Gugliotta and SAI were entitled to judgment notwithstanding the verdict on those same claims. Furthermore, having already determined that Gugliotta and SAI were not entitled to a directed verdict on Morano's counterclaim that they violated the invention-development-services provisions of the CSPA, we hold that both Gugliotta and SAI were not entitled to judgment notwithstanding the verdict on those same claims.

{¶ 58} As a result, Gugliotta/SAI's fifth assignment of error has merit in attacking the denial of their motion for judgment notwithstanding the verdict on Morano's counterclaims pursuant to the general provisions of the CSPA. Gugliotta/SAI's fifth assignment of error lacks merit in attacking the denial of their motion for judgment notwithstanding the verdict on Morano's counterclaims pursuant to the invention-development-services provisions of the CSPA.

### Assignment of Error Number Six

The trial court erred in granting [Morano's] application for award of attorney fees and in granting [Morano] $68,950.00 in attorney fees.

{¶ 59} In their sixth assignment of error, Gugliotta/SAI have argued that the trial court abused its discretion when it awarded Morano $68,950 in attorney fees.

{¶ 60} "For a violation of Chapter 1345. of the Revised Code, * * * [t]he court may award to the prevailing party a reasonable attorney's fee" if the supplier of invention-development-services knowingly committed an act or practice in violation of the CSPA. R.C. 1345.09; R.C. 1345.09(F)(2).

{¶ 61} In the instant matter, because Morano was the prevailing party, the trial court awarded her what it considered reasonable attorney fees pursuant to R.C. 1345.09(F)(2). Given our determination that all of the jury verdicts in the instant matter are vacated, it follows that the trial court's decision awarding Morano attorney fees is vacated as well.

{¶ 62} Gugliotta/SAI's sixth assignment of error has merit.

### Assignment of Error Number Seven

The trial court erred in granting [Morano's] motion for partial summary judgment.

{¶ 63} In his seventh assignment of error, Gugliotta has argued that the trial court erred when it granted Morano summary judgment on his two defamation claims against her. Specifically, Gugliotta has argued that Morano's complaints about Gugliotta and SAI made to the board and the BBB were not made in good faith and, therefore, were not protected by the doctrine of privilege. We disagree.

{¶ 64} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378. Pursuant to Civil Rule 56(C), summary judgment is proper if

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 65} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to

some essential element of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. To support the motion, evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.

{¶ 66} Once the moving party's burden has been satisfied, the burden shifts to the nonmoving party, as set forth in Civ.R. 56(E). *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Furthermore, "an appellate court must affirm summary judgment if there were any grounds to support it." *Ashley v. Baird,* 9th Dist. No. 21364, 2003-Ohio-2711, 2003 WL 21221834, ¶ 12, citing *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272.

{¶ 67} In the instant matter, Gugliotta has argued that summary judgment was improper because a genuine issue of material fact existed as to whether or not Morano's complaints to the BBB and the board were entitled to protection pursuant to the doctrine of privilege. Gugliotta also has argued that the trial court abused its discretion when it denied his request for additional time in which to conduct discovery in order to support his brief in opposition to Morano's motion for summary judgment. In response, Morano has argued that summary judgment on Gugliotta's defamation claims was proper because her statements to the board and the BBB were protected by the doctrine of privilege. She also has argued that the trial court did not abuse its discretion when it denied Gugliotta's motion for additional time to conduct discovery.

{¶ 68} The Supreme Court of Ohio has designated qualified privilege as a proper defense to a claim of defamation in instances where the defamatory statement is fairly made during the course of one's own affairs and the statement is made regarding matters involving the speaker's own interest or interests. *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 244, 72 O.O.2d 134, 331 N.E.2d 713. The *Hahn* Court enumerated certain elements that must be present in order for a statement to merit the protection of qualified privilege: "an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." Id. However, the protections of qualified privilege are not unfettered; the *Hahn* court held that defamatory statements made with actual malice defeat the protection of qualified privilege. Id. at paragraph two of the syllabus. In this context, "actual malice" is defined as "knowledge that the statements are false" or making the statements "with reckless disregard of whether they were false or not." Id., citing *New York Times v. Sullivan,* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

{¶ 69} The Second Appellate District addressed the issue of potentially defamatory statements made to the BBB and held that "[i]n order to advance the interests served by [BBBs]," the protections of qualified privilege attach to communications made by BBBs. *Patio World v. Better Business Bureau* (1989), 43 Ohio App.3d 6, 9, 538 N.E.2d 1098. It is important to note that in *Patio World,* the statements at issue were statements made *by* the BBB, not statements made *to* the BBB. However, we think it only logical to extend the protections of qualified privilege to statements made to a BBB. Therefore, we conclude that statements made to the BBB enjoy the protections of qualified privilege as long as the statements were made absent actual malice.

{¶ 70} In the instant matter, the record reveals that in Morano's letter of complaint to the BBB, she stated that the services she had received from Gugliotta and SAI seemed "like a scam." She was clearly dissatisfied with the services performed by Gugliotta and SAI and was merely registering her complaint. Morano expressed her opinion about SAI. Inherent in her opinion was evidence of her good-faith belief that the services from SAI might be a scam. Thus, we reject Gugliotta's argument that Morano's statements to the BBB were malicious due to a lack of good faith. It follows that her complaint to the BBB enjoyed the protections of qualified privilege. As a result, reasonable minds could come to but one conclusion—namely, that Gugliotta's defamation claim against Morano stemming from her complaint to the BBB must fail. Based on the foregoing, the trial court did not err when it granted Morano summary judgment on Gugliotta's defamation complaint against her stemming from her complaint to the BBB.

{¶ 71} Gugliotta also appears to have argued that Morano's statements to the board were not protected by the doctrine of privilege because Morano did not have a good faith basis for her complaint to the board. Morano has responded that she did have a good faith basis to file her complaint with the board.

{¶ 72} It is well established in Ohio that absolute privilege attaches to statements "made in a grievance filed with a certified grievance committee of a local bar association." *Hecht v. Levin* (1993), 66 Ohio St.3d 458, 460, 613 N.E.2d 585.

{¶ 73} The record reveals that Morano made a complaint to the board, using language almost identical to the complaint made to the BBB. As a result, we again find that Morano had a good faith basis to make her complaint against Gugliotta and SAI to the board. It follows that her complaint to the board enjoyed the protections of absolute privilege. As a result, reasonable minds could come to but one conclusion—namely, that Gugliotta's defamation claim

against Morano stemming from her complaint to the board must fail. Based on the foregoing, the trial court did not err when it granted Morano summary judgment on Gugliotta's defamation complaint against her stemming from her complaint to the board.

{¶ 74} Gugliotta next has argued that the trial court erred when it refused to grant him additional time in which to conduct discovery and respond to Morano's motion for summary judgment.

{¶ 75} Civ.R. 56(F) states:

Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 76} The decision whether or not to grant a Civ.R. 56(F) motion rests within the sound discretion of the trial court. *Tandem Staffing v. ABC Automation Packing, Inc.* (June 7, 2000), 9th Dist. No. 19774, 2000 WL 727534, at 4. An abuse of discretion is not just an error in judgment; it is "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 77} In support of his argument that he was entitled to a continuance pursuant to Civ.R. 56(F), Gugliotta has argued that in Morano's motion for summary judgment, she failed to meet her burden of production pursuant to Civ.R. 56(C); thus, summary judgment was improper. In response, Morano has argued that Gugliotta failed to support his request for additional time in which to conduct discovery with an affidavit as required pursuant to Civ.R. 56(F). As a result, her argument continues, the trial court did not abuse its discretion when it denied Gugliotta's motion.

{¶ 78} Our review of the record reveals that Gugliotta did not support his Civ.R. 56(F) motion with an affidavit. Furthermore, Gugliotta failed to present any arguments or law to this court in support of his contention that the trial court abused its discretion when it denied his motion pursuant to Civ.R. 56(F). As a result, we conclude that the trial court did not abuse its discretion when it denied his request for additional time in which to conduct discovery.

{¶ 79} Gugliotta's seventh assignment of error lacks merit.

### Cross–Assignment of Error Number One

The trial court erred by instructing the jury on contributory negligence and subsequently reducing the legal malpractice award by contributory negligence

where the contributory negligence arose if at all after damages were incurred and malpractice was committed.

## Cross–Assignment of Error Number Two

The trial court erred when it apportioned attorney fees awarded for knowing violations of the CSPA between joint tortfeasors whose unconscionable business practices and misrepresentations of material fact combined to induce a consumer to purchase worthless patent development and marketing services.

{¶ 80} In both of her cross-assignments of error, Morano has argued that the trial court erred with respect to issues surrounding the award of attorney fees resulting from the jury verdicts in her favor. However, because the trial court decision awarding attorney fees to Morano is vacated, we decline to address Morano's two cross-assignments of error. See App.R. 12(A)(1)(c).

## III

{¶ 81} Gugliotta's first, third, and sixth assignments of error are sustained. Appellant's second and fifth assignments of error are sustained in part and overruled in part. Gugliotta's seventh assignment of error is overruled. We decline to address Gugliotta's fourth assignment of error. We decline to address either of Morano's two cross-assignments of error. The judgment of the Summit County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

BATCHELDER and MOORE, JJ., concur.