NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0861n.06

No. 10-4399

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 07, 2012*

LEONARD GREEN, Clerk

FLEX HOMES, INC., ET AL.,                        )
                                                 )
     Plaintiffs-Appellants,                    )
                                                 )
v.                                               )
                                                 )
RITZ-CRAFT CORP OF MICHIGAN, INC., ET AL.,       )
                                                 )
     Defendants-Appellees.                     )
                                                 )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

BEFORE:  GUY and DONALD, Circuit Judges; and O'MEARA, District Judge.[1]

JOHN C. O'MEARA, District Judge.  On February 23, 2007, Flex Homes, Inc. ("Flex") and Ingrid and Kenneth Green ("the Greens," and collectively "Plaintiffs") filed suit in the Court of Common Pleas for Geauga County, Ohio alleging that Ritz-Craft Corp of Michigan and Ritz-Craft Corp of Pennsylvania ("Defendants" or "Ritz-Craft") improperly manufactured, designed, and repaired various components of a prefabricated home.  Specifically, the complaint alleged claims for: (1) breach of contract, (2) breach of implied warranty of workmanship, (3) breach of implied warranties of merchantability and fitness, (4) negligence, (5) products liability, and (6) violations of the Ohio Consumer Sales Protection Act.  Ritz-Craft removed the case.  The district court granted, in part, Defendants' motion to dismiss and motion for summary judgment.  The matter then

---

[1] The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

proceeded to trial. The jury returned a verdict for the Greens on their claims for breach of implied warranty of workmanship and products liability. For these claims, the jury found the Greens were entitled to $12,675.00. Plaintiffs appeal the adverse rulings on their breach of contract claims, the refusal to admit certain testimony, the refusal to strike certain testimony, the jury award, and the jury instructions. The Greens also appeal the adverse ruling on their Ohio Consumer Sales Protection Act claim. For the reasons that follow, we **AFFIRM** the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Flex is owned by Inga Dollinger. It builds and sells both prefabricated and traditionally constructed homes. Ingrid Green, Inga's daughter, is the vice president of Flex. Flex decided to build a model prefabricated home ("the Model Home") in an attempt to attract more customers. Ritz-Craft designs and manufactures the component parts of the prefabricated homes they sell.[2] It ships these component parts to a lot, where a "set-crew"[3] assembles them into a house. After purchasing a lot for the Model Home, Flex had four meetings with Ritz-Craft. During these meetings, Flex contracted with Ritz-Craft to manufacture the Model Home under the terms of the Builder Agreement ("the Agreement"). The Greens agreed to pay for the order in an effort to get better mortgage rates. However, at the time of purchase, it is undisputed that the Model Home was not intended to be the Greens' personal residence. Furthermore, at the closing of the contract, the Greens were not parties to the Agreement.

---

[2] In order to create a prefabricated home, a manufacturer produces the component parts of the home (i.e. the floors, walls and ceilings) and then ships these parts to the location where the home is to be built.

[3] In this context, the term "set" means the on-site construction of the component parts of a prefabricated home.

2

The Agreement provides that "RITZ-CRAFT'S WARRANTY TO THE BUILDER IS AS REFLECTED IN THE LIMITED WARRANTY ATTACHMENT TO THIS AGREEMENT." The Agreement lists a Limited Warranty under the heading "Attachments and Binding Articles." Attached to the Agreement was a document, titled "Builder Policy and Procedure Manual," which describes a one-year warranty. This document provides that

> Ritz-Craft warrants the structural components and operational systems in each home to the original retail purchaser, when purchased new and given reasonable and necessary maintenance, to be free from substantial defects in materials or workmanship.

This warranty extends to the first retail purchaser and its transferee(s).

After contracting with Ritz-Craft, Ingrid procured the necessary documents and prepared for the home to be set. The set was scheduled to be completed February 17, 2005. Numerous problems occurred during the construction of the home. Flex did not pay to have any of these issues repaired. After the construction was complete, the Greens moved into the Model Home despite its defects.

On February 23, 2007, Plaintiffs filed suit in the Court of Common Pleas for Geauga County, Ohio alleging that Defendants improperly manufactured, designed, and repaired various components of the Model Home. The complaint alleged claims for: (1) breach of contract, (2) breach of implied warranty of workmanship, (3) breach of implied warranties of merchantability and fitness, (4) negligence, (5) products liability, and (6) violations of the Ohio Consumer Sales Protection Act ("OCSPA"). Ritz-Craft removed the case to the Northern District of Ohio.

On April 12, 2007, Ritz-Craft moved to dismiss some of Plaintiffs' claims. The district court granted this motion with respect to the Greens' claim for breach of contract, Flex's claim for breach of implied warranty of workmanship, Plaintiffs' claims for breach of implied warranties of

3

merchantability and fitness, Flex's claim of negligence, Flex's OCSPA claim, and all claims for punitive damages. The district court denied Ritz-Craft's motion with respect to the Greens' breach of implied warranty of workmanship claim.

On January 15, 2009, Ritz-Craft moved for partial summary judgment. This motion was granted in part and denied in part. On September 30, 2009, the district court granted the motion with respect to Flex's breach of contract claim, part of the Greens' negligence claim, Flex's products liability claim, and the Greens' OCSPA claim. However, the district court denied Ritz-Craft's motion with respect to the Greens' product liability claims. Thus, prior to trial, all of Flex's claims were dismissed.

Subsequently, the district court proceeded to trial on the Greens' claims of negligence, breach of implied warranty of workmanship, and products liability. Several witnesses presented testimony during trial. Cynthia Casto testified that, based on her experience as a real estate appraiser, the problems in the home impaired its value by $200,000. In order to prove that there were problems with the electrical systems of the Model Home, the Greens presented the expert testimony of Michael Thompson ("Thompson"). Thompson submitted a report which detailed his credentials as an electrician and explained his opinion about the electrical issues with the house. He testified that electrical repairs would cost $62,000. Ritz-Craft responded by putting on their own master electrician, William Tegler ("Tegler"). Joseph Nyzen, a structural engineer, alleged that there were structural problems in the Model Home. The Greens also called on Dale Olson ("Olson"), their finishing contractor, to explain the types of repairs the home needed and to testify to his estimate of the cost of those repairs. Olson was permitted to testify to repairs that would cost $14,860.

4

After the presentation of evidence, the district court requested that each side provide proposed jury instructions to the court. After reviewing the jury instructions, the district court held a hearing in regards to the appropriate jury instructions. During this hearing, the Greens objected to the district court's refusal of their request for a diminution instruction. Following the hearing, the district court instructed the jury without the diminution instruction. After deliberating for two days, the jury returned a verdict in favor of the Greens on three of their claims, and awarded the Greens $12,675. This timely appeal followed.

## ANALYSIS

Plaintiffs claim that the district court made errors which warrant reversal by this court. Specifically, Plaintiffs allege that the district erred by: (1) dismissing the Green's breach of contract claim; (2) granting Defendants' motion for summary judgment with respect to Flex's breach of contract claim; (3) granting summary judgment to Defendants in regards to the Greens' OCSPA claim; (4) failing to provide a diminution of value instruction in the jury instructions; (5) preventing Thompson from testifying about an electrical schematic on re-direct examination; (6) refusing to admit portions of Olson's testimony about the cost of repair work done on the model home; (7) refusing to strike Tegler's alleged non-responsive testimony; and (8) for entering the jury verdict. Because neither party objects to the district court's choice to apply Pennsylvania law to certain aspects of this case and Ohio law to others, this opinion assumes, without concluding, that this choice of law analysis is correct.

## I. The Greens' Breach of Contract Claim

The Greens challenge the district court's dismissal of their breach of contract claim for failing to state a claim upon which relief can be granted. Whether a complaint sufficiently states a basis for

5

relief is a question of law which is reviewed *de novo*. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (considering the district court's decision to grant the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)). At this early stage of litigation, a complaint need only contain "a short and plain statement" showing the claimant is entitled to relief. Fed. R. Civ. P. 8(a)(2). This requirement has recently been interpreted as demanding that the facts stated provide a plausible basis for the claims in the complaint. *Napolitano*, 648 F.3d at 369 (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible if the facts alleged allow a reasonable inference that the defendant is liable for the purported misconduct. *Id.* A dismissal of a complaint may be affirmed on any reasonable ground, even if the district court invoked other grounds. *Ind. State Dist. Counsel of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009). "[W]e have an obligation to enforce a district court's orders if grounds for doing so are apparent from the record before us." *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003) (citing *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir.1985)).

The Greens argue that they are third-party intended beneficiaries of the Agreement and, therefore, the district court erred in dismissing their breach of contract claim. The Greens contend that the warranty provisions in the attachments to the Agreement provide them with third-party intended-beneficiaries status under the Agreement. However, breach of contract is a different cause of action than breach of express warranty. Thus, the Greens ask us to either elide the distinction between these causes of action or to read into their breach of contract claim a claim for breach of express warranty.

6

We decline to eliminate the distinction between the two causes of action out of respect for the balance that Pennsylvania courts have struck in providing third-party intended-beneficiary status. In dismissing the Greens case, the district court thoroughly examined the doctrine of third-party intended-beneficiary status in Pennsylvania and found that non-named third parties should only receive this status in a narrow class of cases. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich.*, *Inc.*, No. 07cv1005, 2008 WL 746669, at *5 (N.D. Ohio Mar. 18, 2008) [hereinafter *Flex I*] (collecting cases). After completing this review, the district court held that the warranty at issue in this case was "not sufficient to confer the full benefits of third-party beneficiary status to [the Greens], particularly in light of the principles of Pennsylvania third-party beneficiary law . . . ." *Id.*, at *6. Because the Greens have not explained a limiting principle to their argument, permitting them to claim third-party beneficiary status in this case would indicate that all warranty claims should be given this status. Adding a new type of action to third-party intended-beneficiary status unnecessarily broadens a class of claims which Pennsylvania courts have kept narrow. *See Manor Junior College v. Keller's Inc.*, 507 A.2d 1245, 1247 (Pa. Super. 1986) (explaining that third-party intended-beneficiary status should be restricted to a "narrow class"). Rather than expanding a class that Pennsylvania courts have sought to keep narrow, it is appropriate to require a party with an express warranty claim to plead that cause of action. Thus, we will not ignore the distinction between the two types of claims.

Furthermore, we are not persuaded that this is an appropriate case to read a breach of warranty claim into a claim for breach of contract. *See Superior Kitchen Designs, Inc. v. Valspar Indus.*, *Inc.*, 263 F.Supp.2d 140, 148 (D. Mass. 2003) ("While the allegations of the complaint are construed favorably to the plaintiff, the court will not read causes of action into the complaint which are not alleged."). The complaint in this case was submitted by an attorney who is learned in the

7

law. The complaint alleged both a breach of contract claim and a breach of implied warranty claim. When faced with Defendants' motion to dismiss, the Greens' counsel requested permission to submit documentation of a warranty to bolster Greens' third-party intended-beneficiary status. *Flex I,* 2008 WL 746669, at *6 n.7. At this point, counsel could have made a motion to amend the complaint to allege a breach of express warranty claim. Federal Rule of Civil Procedure 15 provides that the court should freely grant this motion when justice so requires. However, counsel never took this action. Due to these decisions, we will not read a breach of express warranty claim into a claim for breach of contract. Therefore, we affirm the district court's decision to dismiss the Greens' breach of contract claim.

## II. Flex's Breach of Contract Claim

Flex appeals the district court's decision to grant Defendants' motion for summary judgment with respect to Flex's breach of contract claim. We review a grant of summary judgment *de novo,* construing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011) (citations omitted). To survive a motion for summary judgment, "'there must be evidence on which the jury could reasonably find for the' non-moving party." *Id.* (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008) (internal citation omitted)). Thus, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In moving for summary judgment against Flex's contract claim, Defendants only alleged that Flex could not prove damages. The district court granted Defendants' motion for summary judgment because it found that Flex had not suffered any damages, which it must incur to bring a claim for

breach of contract under the Agreement.  *Flex Homes, Inc. v. Ritz-Craft Corp. of Mich., Inc.*, No. 07cv1005, 2009 WL 3242140, at *9 (N.D. Ohio Sept. 30, 2009) [hereinafter *Flex II*].

The Agreement is governed by Pennsylvania law.  *Id.*, at *8.  Under Pennsylvania law, "the interpretation of the terms of a contract is a question of law for which our standard of review is *de novo*, and our scope of review is plenary."  *Braun v. Wal-Mart Stores*, 24 A.3d 875, 957 (Pa. Super. 2011) (emphasis in original) (quoting *McMullen v. Kutz*, 985 A.2d 769, 773 (Pa. 2009)).  This interpretation

> requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement. Courts assume that a contract's language is chosen carefully and that the parties are mindful of the meaning of the language used. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*Id.* (citing *Dep't of Transp. v. Penn. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Commw. Ct. 2005) (citations and quotation marks omitted)).

Flex claims that the district court erred in granting summary judgment to Ritz-Craft because there are still uncured defects in the Model Home.  Flex argues that the district court gave too much weight to whether it incurred any expenses with respect to the Model Home.  It contends that the district court ignored the fact that the Model Home was in need of repairs.  Flex maintains that evidence of "the defects [in the Model Home] were identified and quantified in the Olson, Nyzen, and Thompson reports . . . ."  Additionally, Flex maintains that the limitation of liability in the builders agreement is not a disclaimer as to material defects.  Thus, Flex argues that the existence of defects is sufficient to establish damages arising from its breach of contract claim against Ritz-Craft.

9

In presenting this argument, Flex focuses on whether defects existed without explaining why the district court's interpretation of the limitation of liability clause is incorrect. The district court stated that this clause "is an agreed remedy that permits Flex Homes to recover *only* for damages tied to the *purchase* of the pre-fabricated home . . . ." *Flex II*, 2009 WL 3242140, at *9 (emphasis added). Subsequently, the district court found that "Flex Homes did not incur any costs in connection with the purchase of the Model Home . . . ." *Id.* The district court focused on whether or not Flex made any payments to Ritz-Craft because it read the contract as limiting Flex's damages to the extent it purchased the home. *Id.* Flex does not directly contest the district court's interpretation of the contract, which does not appear to be at odds with the plain language of the Agreement.[4] Because the provision limits the total amount of damages to nothing, Flex has not demonstrated the existence of damages. Therefore, we affirm the district court's grant of summary judgment to Ritz-Craft with respect to Flex's breach of contract claim.

## III. Consumer Transactions Defined by the Ohio Consumer Sales Protection Act

Plaintiffs argue that either the grant of summary judgment to Defendants in regards to the Greens' OCSPA claim or the jury instructions were in error because these two decisions are internally inconsistent. Plaintiffs argue that in granting summary judgment, the district court found that the transaction was not a "consumer transaction" under OCSPA, but when instructing the jury, the district court found that the case involved a personal realty transaction. Plaintiffs contend that all sales which are not consumer transactions must be commercial transactions. Thus, Plaintiffs argue that these decisions are internally inconsistent.

_____

[4] The relevant language reads "RITZ-CRAFT'S MAXIMUM RESPONSIBILITY IN DAMAGES FOR ANY SALE IS LIMITED TO THE PRICE CHARGED FOR THAT SALE."

The district court did not err in dismissing the Greens' OCSPA claim on summary judgment. The district court provided a thorough explanation of why this transaction fails to fit within the definition of a "consumer transaction" under Ohio Rev. Code § 1345.01. *Flex II*, 2009 WL 3242140, at *11-12. Because we agree with this reasoning, we will briefly reiterate it to explain why we affirm the district court's decision. Ohio Rev. Code § 1345.01 defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Based on a totality of the circumstances, Ohio courts determine the nature of the transaction at issue "at the time the parties entered into a binding agreement." *Gugliotta v. Morano*, 829 N.E.2d 757, 766 (Ohio Ct. App. 2005). It is undisputed that, at the time of the transaction, the parties entered into the Agreement for business purposes. Thus, the district court found that the transaction at issue was not covered under OCSPA. *Flex II*, 2009 WL 3242140, at *12. Because Plaintiffs fail to rebut this sound reasoning, we affirm the district court's decision to grant Defendants' motion for summary judgment with respect to the Greens' OCSPA claim.

## IV. The Jury Instructions

Plaintiffs make two arguments that the district court erred when it instructed the jury. When a jury instruction is challenged,

> [f]ederal law governs our standard of review in diversity cases. This court reviews a district court's refusal to give requested jury instructions under an abuse of discretion standard. We define an abuse of discretion as a definite and firm conviction that the trial court committed a clear error of judgment. Although trial courts have broad discretion in framing jury instructions, state law determines the substance of jury instructions in a diversity action, while federal procedural law

11

governs questions regarding the propriety of the instructions. The federal court, sitting in diversity, applies the same law as would be applied by the Ohio state courts.

We review jury instructions as a whole in order to determine whether the instructions adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision.

*Hisrich v. Volvo Cars of North Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000) (internal citations, quotation marks, and footnotes omitted). A "reviewing court may reverse a judgment only if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *United States v. Lawhorn*, No. 10–4616, 2012 WL 987750, at *3 (6th Cir. Mar. 26, 2012) (quoting United States v. Sheffey, 57 F.3d 1419, 1429 (6th Cir. 1995)); *see also Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 787 n.3 (6th Cir. 2003) (explaining that the correct statement of this standard uses the conjunction "and"). Thus, "we will not set aside a jury verdict on the basis of a technically faulty jury instruction when the error is harmless." *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009) (citing *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir.2000)).

The first part of Plaintiffs' argument is that the district court's OCSPA holding demonstrates that the transaction was commercial, and therefore, requires a jury instruction indicating that a proper measure of damages can be the direct economic loss of Plaintiffs. The basic premise of this argument is that all sales are either consumer transactions or commercial transactions. Plaintiffs provide no legal support for this premise. However, there are legal reasons for rejecting Plaintiffs' premise. Ohio Rev. Code § 1345.01 provides that the definitions it lists are "used in sections 1345.01 to 1345.13 of the Revised Code." Because this phrase limits the definitions to claims under OCSPA, it does not necessarily follow that a transaction which fails to fit within the definition of

12

a "consumer transaction" under OCSPA is not a consumer transaction in some other context. Nor does it make sense to apply the district court's reasoning, with respect to this definition, to claims which were not for "goods, a service, a franchise, or an intangible . . . ." Ohio Rev. Code § 1345.01. Thus, we are not persuaded that the district court made internally inconsistent rulings.

Plaintiffs also argue that the jury instructions were in error because breach of workmanlike quality and products liability claims are implied warranty claims for which Ohio case law permits a plaintiff to recover economic damages. Assuming *arguendo* that Plaintiffs are correct with respect to this second issue, Plaintiffs have not demonstrated that the failure to provide a diminution instruction satisfies the prejudice requirement. While the jury was instructed not to consider diminution in the total damage award, they were permitted to consider it as evidence regarding the reasonableness of the cost of repairs, and they were instructed to award Plaintiffs the cost of reasonable repairs.

Plaintiffs claim that the testimony of Cynthia Casto demonstrates that they were prejudiced by this instruction. She testified that, based on her experience as a real estate appraiser, the problems in the home impaired its value by $200,000. The jury also heard extensive testimony regarding the cost of repairing the Model Home. Plaintiffs' contractor testified that the repairs would cost $14,860 and Plaintiffs' electrician testified that repairs would cost $62,000. Thus, the jury heard testimony permitting it to award a total of repair bill $76,860. However, after hearing this and other testimony, the jury awarded the plaintiffs $12,675.

This result indicates that Plaintiffs were not prejudiced by the instruction. Prejudice exists if there is a substantial risk that the outcome of the trial was affected. *Whitson v. Knox Cnty. Bd. of Educ.*, No. 10–6240, 2012 WL 913708, at *4 (6th Cir. Mar. 20, 2012) (citing *Stockman*, 480 F.3d

13

at 799). If the testimony of Ms. Casto was particularly persuasive and the home was actually devalued by $200,000, then it is reasonable to expect the jury to award all or substantially close to the entire repair bill, which was less than half of the claimed lost value. However, the jury awarded less than one fifth of the repairs. Determining "'[w]itness credibility is solely within the jury's province . . . .'" *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 448 (6th Cir. 2011) (quoting *McDonald v. Petree*, 409 F.3d 724, 731 (6th Cir. 2005)). The jury award in this case shows that they did not find Ms. Casto's testimony credible. While there are situations where the diminution of value would not be covered by the cost of repairs, the discrepancy between the jury award and the evidence presented for lost value shows that the case at bar is not one of those situations. Therefore, Plaintiffs have failed to show a substantial risk that the outcome of the trial was affected by the district court's refusal to provide a diminution instruction. For the aforementioned reasons, we affirm the district court's refusal to provide the diminution jury instruction.

## V. The Limitation Placed on the Re-Direct of Thompson

Plaintiffs argue that the district court erred in denying Thompson the opportunity to view and subsequently testify about the schematics which were mentioned by Defendants during cross-examination. Rulings on the admissibility of evidence are reviewed for abuse of discretion. *Greenwell v. Boatwright*, 184 F.3d. 492, 495 (6th Cir. 1999).

During the cross-examination of Thompson, Defendants asked and Thompson answered as follows:

> Q. The bid that you provided is based on -- well, generally speaking, you said bids are based upon your review of schematic designs, your search of -- or inspection of the particular site that you'd be preparing a bid for, correct?

14

A. This is concerning old work. So it's more man hours involved than what a new construction home would cost to wire.

Q. But, still your methodology of coming up with your bid, you said earlier you look at a schematic plan, you determine by looking at the plan perhaps how many receptacles are in the house, how many switches are in the house?

A. Yes.

. . . .

Q. Did you ever ask for a schematic plan for this home?

A. No.

Q. Did you know whether any schematic plans existed for this particular home?

A. No.

On redirect, Plaintiffs sought to have Thompson look at, and testify about, the schematic plan of the Model Home. Defendants objected. The district court upheld Defendants' objection because it found that this testimony was not included in Thompson's report and because the schematic was not previously viewed by Thompson.

This decision is in accordance with Rules 26 and 37 of the Federal Rules of Civil Procedure. Rule 26 provides the disclosure requirements for expert testimony and requires the proffering side to submit a report which explains the data and exhibits which verify the expert opinion. Fed. R. Civ. P. 26(a)(2). Rule 37 requires that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial . . . ." Fed. R. Civ. P. 37(c)(1). Because Thompson's report does not mention that he ever reviewed the schematic of the Model Home, the district court did not abuse its discretion

by refusing to admit this evidence. Therefore, we affirm the decision to prevent Thompson from testifying about the schematic.

## VI. The Testimony of Dale Olson

Plaintiffs argue that the district court abused its discretion when it excluded Olson's testimony regarding the cost of repairing the Model Home. Rulings on the admissibility of evidence are reviewed for abuse of discretion. *Greenwell*, 184 F.3d at 495. Plaintiffs contend that the district court excluded Olson's testimony because of Olson's use of the word "guesstimate" and a mistaken belief that Olson's testimony was purely speculation. Plaintiffs argue that Olson, as an expert, is qualified to estimate the cost of his work, and it should have been up to the jury to weigh the evidence.

The district court excluded Olson's testimony because it found that Olson could not offer his expert opinion without a proper foundation. When Plaintiffs asked Olson about the cost of repairing the Model Home, Defendants objected. The district court responded:

> There was a motion in limine on [the speculative nature of Olson's testimony with respect to the cost of repairs to the Model Home]. When I ruled on it, I said that you had to very carefully lay the foundation for how he came up with this entire estimate before you could ask him for a number, because the debate on the motion in limine was the fact that he sort of used the phrase a "guesstimate" in his deposition when he said how he came up with his numbers as it relates to how much drywall [he would] have to remove. And I was very specific when I told you that you had to lay the foundation. And when yesterday you tried to start out [with Olson's repair bid], I told you that's not appropriate . . . .
>
> . . . .
>
> . . . There is always some estimate that has to go in [to a contractor's bid for work], but that's very different than pure speculation . . . .
>
> . . . .

. . . He said in his deposition, whether he meant it or not, he used the word "guesstimate." That is not sufficient for an expert opinion.

Expert testimony is admissible, at the discretion of district court, if the witness is sufficiently qualified, the testimony is relevant, and the testimony is reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2007) (citing Fed. R. Evid. 702). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Id.* at 529-30. From the district court's explanation, it is clear that the district court did not find Olson's opinion to rest on a reliable foundation.

The only evidence Plaintiffs provide to undermine the district court's determination is Olson's deposition testimony indicating that the possibility of removing whole walls or whole sections of walls was the basis of his estimate. This statement, by itself, is not sufficient to demonstrate that the district court abused its discretion when in determining that the foundation for testimony regarding the total cost of the work was not laid. Therefore, we affirm the district court's decision to exclude Olson's testimony.

## VII. The Testimony of Tegler

Plaintiffs argue that the district court erred when it failed to strike the allegedly non-responsive testimony of Tegler.

Plaintiffs fail to explain how this alleged error prejudiced them. A non-constitutional error is harmless unless it is more probable than not that the error impacted the verdict. *Stockman, D.D.S., v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 799 (6th Cir. 2007) (citing *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993)) (internal quotation marks omitted). It is appropriate to consider the

17

entire record to determine if the alleged error was likely to prejudice the party. *Id.* "Prejudice exists only where there is a substantial risk that the outcome of the trial was affected." *Whitson v. Knox Cnty. Bd. of Educ.*, No. 10–6240, 2012 WL 913708, at *4 (6th Cir. Mar. 20, 2012) (citing *Stockman*, 480 F.3d at 799). Because Plaintiffs fail to show how any part of Tegler's alleged non-responsive answers impacted the outcome of the trial, we affirm the district court's denial of Plaintiffs' motion to strike.

## VIII. The Jury Award

Plaintiffs argue that the district court abused its discretion when it entered a judgment on the jury's verdict. They contend that based on the evidence produced at trial, the award of $12,675 is beyond the range supportable by proof. Thus, Plaintiffs argue, for the first time, that there is insufficient evidence to support the jury award.

Plaintiffs waived this claim by failing to make any post-verdict motion below. Plaintiffs failed to move for a directed verdict under Federal Rule of Civil Procedure 50(a), for a judgment notwithstanding the verdict under Rule 50(b), or for an altered judgment under Rule 59. Plaintiffs appear to ask this court to alter or amend the judgment. Fed. R. Civ. P. 59(e). However, because of the failure to make any post-verdict motion below, Plaintiffs' argument is barred by *Maxwell v. Dodd*, 662 F.3d 418 (6th Cir. 2011), which explained that

> appellate courts do not directly review the actions of juries; they review a trial judge's assessment of the work of the jury through a motion for judgment as a matter of law, allowing the trial judge who had a ring-side view of the witnesses to make a first cut on whether one side or another must prevail on the claim. *Young v. Langley*, 793 F.2d 792, 794 (6th Cir.1986). In the context of a jury trial, the Federal Rules of Civil Procedure tell parties to speak up at two times if they want the court to resolve the claim as a matter of law. They must move for judgment as a matter of law before the claim goes to the jury, *see* Fed. R. Civ. P. 50(a), and they must renew the motion (or seek a new trial) after the jury issues its verdict, *see* Fed. R. Civ. P. 50(b); Fed. R.

18

Civ. P. 59. In this case, [the appellant] did neither, depriving us of any district court ruling on the issue (and most essentially of any Rule 50(b) ruling by the judge who heard the evidence) and preventing us from considering the claim in the first instance on our own. *Unitherm Food Sys., Inc. v. Swift–Eckrich*, *Inc.*, 546 U.S. 394, 400–01, 126 S.Ct. 980, 163 L.Ed.2d 974 (2006); *Young*, 793 F.2d at 794–95.

*Id.* at 420-21. Because Plaintiffs failed to move for relief under Rules 50 and 59, we affirm the jury verdict.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decisions of the district court.