NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0406n.06

No. 12-6348

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 06, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

BRYAN GOYER,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE

BEFORE:    DAUGHTREY, CLAY, and STRANCH, Circuit Judges.

**CLAY, Circuit Judge.** Bryan Goyer ("Defendant") was indicted on the charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). After conducting a hearing on Defendant's motion to suppress, the district court denied the motion to suppress and Defendant's motion for a justification defense jury instruction. Defendant then entered a conditional guilty plea reserving his right to challenge only the district court's denial of his motion to suppress. Defendant now argues on appeal that the district court erred in denying his motion to suppress and his justification defense jury instruction. For the reasons set forth below, we **AFFIRM** Defendant's conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

## BACKGROUND

### A.     Procedural History

Defendant was indicted by a grand jury on charges of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  Subsequently, he filed a motion to suppress evidence and a motion for a justification defense jury instruction, to which the government filed responses in opposition.  After conducting a hearing, the district court denied both of Defendant's motions and granted the government's motion *in limine*.  Defendant then entered a conditional guilty plea, in which, pursuant to Fed. R. Crim. P. 11(a)(2), he reserved his right to have this Court "review the adverse determination of his motion to suppress."  Defendant did not, however, reserve his right to appeal any other issues.

The Presentence Report ("PSR") determined that due to Defendant's prior criminal convictions, he was subject to the Armed Career Criminal Act, 18 U.S.C. § 924(e).  The advisory guideline range adopted by the PSR was 188 to 235 months in prison.  The district court adopted these findings and imposed a statutory minimum, below-guideline sentence of 180 months.  On October 30, 2012, after the sentence was imposed, Defendant filed a timely notice of appeal.

### B.     Factual Background

The Safe Streets Task Force ("Task Force") for Shelby County, Tennessee had been investigating a recent string of armed bank robberies around Memphis.  Based on surveillance video of one of the robberies, Task Force officers identified Ernest Goodman ("Goodman") as a suspect in several of the bank robberies.  During all of the robberies Goodman had been armed with a black semi-automatic pistol, and during that last bank robbery, Goodman had discharged his firearm while inside the bank.  The surveillance video, and a photograph of Goodman obtained by the Task Force, showed him wearing an earring with a large clear stone.  In addition

to viewing the surveillance video, and obtaining a photograph of Goodman, the officers had a physical description of Goodman's height and weight.

In the evening hours of July 1, 2011, approximately ten Task Force agents, led by Memphis Police Lieutenant Joseph Locastro ("Lieutenant Locastro"), traveled to Jackson, Tennessee to execute an arrest warrant for Goodman. After arriving in Jackson, the Task Force officers, accompanied by uniformed Jackson Police Department officers, proceeded to an apartment which had been identified as the place where Goodman could be found.

After the officers pulled into the apartment's parking lot, Lieutenant Locastro saw a man fitting Goodman's physical description as well as wearing an earring with a large clear stone standing outside. After stepping out of the car, Lieutenant Locastro issued commands to Defendant in an attempt to get him to identify himself and come towards the officers. Lieutenant Locastro identified himself as a police officer, and asked Defendant to keep his hands where he could see them.

When those verbal commands went unanswered, Lieutenant Locastro raised his voice and repeated the commands. Rather than oblige the officer's commands, Defendant started to walk away hurriedly. As Defendant turned and moved back across and in front of where Lieutenant Locastro was standing, Defendant reached down with his right hand tugging at his waistband. Lieutenant Locastro took this movement as indicative of somebody who has a weapon and immediately asked Defendant to turn around.

Lieutenant Locastro swept the front waistband of Defendant's pants and found a black semi-automatic pistol. The officers handcuffed Defendant and became aware that rather than their target, Goodman, they had seized Defendant, Bryan Goyer. The officers then ran a

background check and found Defendant had a prior felony conviction, and he was arrested. Following Defendant's arrest, the officers then apprehended Goodman in the apartment.

When Lieutenant Locastro initially approached Defendant, he believed he was approaching Goodman, a man who had just committed several armed robberies. Defendant described his perception of the encounter at the suppression hearing as being in "the wrong place at the wrong time" and being mistaken as "somebody else." (R. 85, Transcript, at 235.) Defendant testified that he was not similar to Goodman in height, weight, or complexion. The district judge was able to compare Defendant's appearance with a photograph of Goodman and noted that what he was seeing was the opposite of what Defendant had stated regarding complexion. The court noted the variances in the height and weight descriptions between Defendant and Goodman, but also noted the similarities, including the similar earring each wore. After reviewing the evidence, the court found that based on the totality of the circumstances, Lieutenant Locastro had a reasonable suspicion that justified the brief seizure and search of Defendant.

Right after the suppression hearing, the court heard the government's motion *in limine* as to the justification defense raised by Defendant. Defendant testified that he was taking a shortcut near his sister's residence, when he saw a handgun in the grass near some children playing with fireworks. While he was aware he had a prior felony conviction, he felt that either his nephew or another child would pick up the gun and run with it. He said he picked up the gun to keep the children from getting harmed. He said he intended to throw it in the dumpster, but came into contact with the police shortly after picking it up. The court granted the government's motion *in limine*, and denied defendant's justification jury instruction request.

## DISCUSSION

**I.      The district court did not err in denying Defendant's Motion to Suppress**

***Standard of Review***

We review a district court's decision on a suppression motion for clear error as to factual findings and *de novo* as to conclusions of law. *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004). If the district court denied the motion to suppress, "we must view the evidence in the light most favorable to the government." *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008) (internal quotation marks omitted). "Whether a seizure is reasonable under the Fourth Amendment is a question of law that [this Court] review[s] *de novo*." *United States v. Evans*, 581 F.3d 333, 340 (6th Cir. 2009). The Court may uphold the denial of a motion to suppress on any ground supported by the record. *United States v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009).

Factual findings or credibility determinations by the district court are clearly erroneous only if "'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). When a motion to suppress is premised on challenging a *Terry* stop, "determinations of reasonable suspicion . . . should be reviewed *de novo* on appeal." *Ornelas v. United States* 517 U.S. 690, 699 (1996). "[T]he district court is at an institutional advantage, [however,] having observed the testimony of the witnesses and understanding local conditions, in making this determination. Accordingly, 'due weight' should be given to the inferences drawn from the facts by 'resident judges.'" *United States v. Townsend*, 305 F.3d 537, 542 (6th Cir. 2002) (quoting *Ornelas v. United States*, 517 U.S. 690, 698 (1996)) (alterations omitted).

*Analysis*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A person is seized within the meaning of the Fourth Amendment when: (1) an officer "by means of physical force or show of authority has in some way restrained [his] liberty," *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968), such that "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988); and (2) the person "yields" to this show of authority, *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

"A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Brendlin v. California*, 551 U.S. 249, 254 (2007); *accord United States v. Martin*, 399 F.3d 750, 752 (6th Cir. 2005) ("[W]hen a suspect refuses to submit to a show of authority by the police, the suspect is not seized by the police until such time as he or she submits or is forced to submit to police authority.").

In order for a seizure to be reasonable, and thus consistent with the Fourth Amendment, it must be supported by an appropriate justification. In the case of an investigative *Terry* stop, the police must have "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). For an arrest, police must have "probable cause" to believe that the individual "had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

In evaluating the constitutionality of a *Terry* stop, this Court asks whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion. *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). In answering whether the facts gave rise to reasonable suspicion, this Court examines whether the totality of the circumstances supports a determination that the investigatory stop was reasonable. *Id.*

"A law enforcement agent may conduct a pat-down search to find weapons 'where he has reason to believe that he is dealing with an armed and dangerous individual.' The 'issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *United States v. Bohannon*, 225 F.3d 615, 617 (6th Cir. 2000) (citing *Terry*, 392 U.S. at 27). In other words, "[o]nce a lawful stop pursuant to the *Terry* doctrine occurs, a frisk or partial search, consisting of a police officer's 'pat-down' of a person's outer garments, is permissible where it appears from the facts known to the officer that there is a reasonable likelihood that the restrained individual is armed and the officer's safety is in jeopardy." *United States v. Roach*, 958 F.2d 679, 682 (6th Cir. 1992).

On July 1, 2011, Lieutenant Locastro, accompanied by approximately ten other officers, went to an apartment in Jackson, Tennessee in an attempt to locate and arrest an individual wanted for a series of bank robberies. Prior to leaving for Jackson, Lieutenant Locastro obtained a photograph of the suspect, and had also reviewed bank surveillance video footage of the suspect robbing a local bank, during which the suspect discharged his firearm.

Upon arriving at the complex, Lieutenant Locastro got out of his vehicle and saw a man standing in front of the apartment where the suspect was allegedly located, matching his physical build, complexion, and wearing the same earring. Rather than the suspect Goodman, the

individual was actually Defendant. Lieutenant Locastro began to issue verbal commands to Defendant in an attempt to get him to identify himself and come towards the officers. Lieutenant Locastro identified himself as a police officer, and asked Defendant to keep his hands where he could see them.

When those verbal commands went unanswered, Lieutenant Locastro raised his voice and repeated the commands. After repeating the command to identify himself and show his hands, Defendant started to walk away hurriedly. As Defendant turned and moved back across and in front of where Lieutenant Locastro was standing, Defendant reached down with his right hand tugging at his waistband. Lieutenant Locastro took this movement as indicative of somebody who had a weapon and immediately asked Defendant to turn around.

Lieutenant Locastro swept the front waistband of Defendant's pants and found a black semi-automatic pistol. The district court found that the officers had obtained a photograph of the suspect they were seeking, and observed an individual who they reasonably believed to be that person based on the description they had been given. The photograph was admitted into evidence, allowing the district court to compare it with Defendant's physical appearance. The individual the police were seeking not only possessed and brandished a firearm during the commission of a bank robbery, but on at least one occasion had also exhibited his willingness to use the weapon by discharging it inside a bank just a few days ago.

In this case, Defendant not only matched the physical description of the suspect, he was observed wearing the same earring as the suspect as well as being located outside the apartment where the suspect was believed to be residing. When first observed, Defendant ignored the officer's verbal commands, engaged in evasive behavior, and attempted to reach toward his

8

waistband. As a result, the district court's determination of the facts was not clearly erroneous, and the officers had reasonable suspicion to stop Defendant.

**II. Defendant waived his right to challenge the district court's denial of his justification defense jury instruction**

*Standard of Review*

We review a district court's refusal to give requested jury instructions under an abuse of discretion standard. *Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*, 491 F. App'x 628, 635 (6th Cir. 2012) (citing *Hisrich v. Volvo Cars of North Am., Inc.,* 226 F.3d 445, 449 (6th Cir. 2000)). A district court abuses its discretion to give a requested jury instruction when it is "(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *United States v. Franklin*, 415 F.3d 537, 553 (6th Cir. 2005).

While the review of selected jury instructions is for abuse of discretion, the district court's determination of whether Defendant established a *prima facie* case of the affirmative defense of justification is a question of law we review *de novo*. *United States v. Sloan*, 401 F. App'x 66, 69 (6th Cir. 2010). The justification defense arises only in rare situations and should be construed very narrowly. *Id*. Similarly, if the denial of the defendant's motion is viewed as an evidentiary ruling, such determinations are subject to an abuse of discretion standard of review. *Hancock v. Dodson*, 958 F.2d 1367, 1371 (6th Cir. 1992). Whether a defendant has waived his right to appeal is a legal question that this Court reviews *de novo*. *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005).

*Analysis*

Defendant appeals the denial of his request that at trial the district court instruct the jury on the theory of justification. Defendant, however, failed to preserve his right to appeal this

particular ruling when he entered his conditional plea. *United States v. Alexander*, 540 F.3d 494, 504 (6th Cir. 2008). Federal Rule of Criminal Procedure 11(a)(2) authorizes defendants to enter conditional guilty pleas, "reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Therefore, "[w]here a defendant does not specify an issue for preservation on appeal, federal courts have normally held that Rule 11(a)(2) bars its presentation on appeal." *Alexander*, 540 F.3d at 504–05 (citing *United States v. Martin,* 526 F.3d 926, 932 (6th Cir. 2008)).

As in *Alexander*, "[Defendant] entered a conditional guilty plea that preserved only his right to appeal the denial of his motion to suppress. The plea agreement does not [discuss] the district court's denial of [Defendant's motion for a jury instruction on justification]. [Thus, Defendant's] appeal of that ruling is not properly before [this Court]." *Id.* at 505. In *United States v. Pickett,* 941 F.2d 411 (6th Cir. 1991), this Court read Fed. R. Crim. P. Rule 11(a)(2) as "plac[ing] an affirmative duty on the defendant to preserve *all* potential collateral challenges through the preservation mechanism of Rule 11(a)(2)." *Id.* at 416 (emphasis in original). Defendant's notice for his conditional plea of guilty seeks to reserve only the right to have this Court review the denial of his motion to suppress. (R. 37, Notice of Conditional Plea of Guilty, at 56.) As a result, Defendant waived his right to challenge the district court's denial of his affirmative defense of justification.

III.    **The district court did not err in sentencing Defendant pursuant to the Armed Career Criminal Act**

### *Standard of Review*

Whether a defendant has waived his right to appeal is a legal question that this Court reviews *de novo*. *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005). Whether a statute is unconstitutionally vague is a legal issue reviewable *de novo*. *United States v. Namey*,

364 F.3d 843, 844 (6th Cir. 2004).  "This Court reviews the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement *de novo*."  *United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004) (quoting *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003)).  We review a district court's sentencing determination for reasonableness under a deferential abuse of discretion standard.  *United States v. Bolds,* 511 F.3d 568, 578 (6th Cir. 2007).

This reasonableness review involves two steps:  (1) procedural and (2) substantive.  *Id.* First, we evaluate the procedural reasonableness to ensure that the district court did not commit "significant procedural error, such as: failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."  *Id.* (quoting *Gall v. United States,* 552 U.S. 38, 51 (2007)).  Next, we assess the substantive reasonableness of a sentence.  As "[t]he essence of a substantive-reasonableness claim is whether the length of the sentence is greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)," a sentence will be found substantively unreasonable if "the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor."  *United States v. Corp,* 668 F.3d 379, 386 (6th Cir. 2012) (internal quotation marks omitted).  In doing this two-step review, "[t]he district court's interpretation of the advisory Guidelines is reviewed *de novo,* and its findings of fact are reviewed for clear error." *United States v. Brown,* 579 F.3d 672, 677 (6th Cir. 2009).

However, since Defendant failed to object to any sentencing decisions by the district court, this Court's review on this issue is only for plain error.  *See e.g.*, *United States v. Yancy*,

725 F.3d 596, 599–600 (6th Cir. 2013); *United States v. Darwich*, 337 F.3d 645, 655-56 (6th Cir. 2003). To establish plain error, Defendant must show "(1) that an error occurred in the district court; (2) that the error was plain, *i.e.,* obvious or clear; (3) that the error affected [Defendant's] substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).

*Analysis*

Defendant asks us to reverse the sentence imposed by the district court and remand the case contending that the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is "unconstitutionally vague." Just as Defendant's appeal of the denial of his affirmative defense of justification was waived because he failed to preserve it when he entered his conditional plea, Defendant also waived the right to appeal this issue since he did not preserve it when he entered his conditional plea. Federal Rule of Criminal Procedure 11(a)(2) authorizes defendants to enter conditional guilty pleas, "reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion." Therefore, "[w]here a defendant does not specify an issue for preservation on appeal, federal courts have normally held that Rule 11(a)(2) bars its presentation on appeal." *Alexander*, 540 F.3d at 504–05 (citing *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008)).

Defendant's claim also fails because it has been rejected by this Circuit before. *See United States v. Stafford*, 721 F.3d 380, 403 (6th Cir. 2013). This Court has specifically recognized that the "residual clause" of the ACCA is constitutional and "provides guidance that allows a person to conform his conduct to the law." *Stafford*, 721 F.3d at 403 (internal quotation marks and citations omitted). Most recently in *Sykes v. United States*, 131 S. Ct. 2267, 2277

(2011), the Supreme Court noted that although the Armed Career Criminal Act's general and qualitative approach to defining violent felonies "may at times be more difficult for courts to implement, it is within congressional power to enact."

In addition, Defendant contends that the Supreme Court's recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), requires remand, because "by classifying [Defendant] as an armed career criminal and thus increasing the statutory mandatory minimum sentence, the court violated the Sixth Amendment." Notwithstanding that neither claim made here was presented to the district court, again, Defendant's position is contrary to this Court's precedent. This Court has squarely held that *Alleyne* did not disturb the rule in *Almendarez-Torres v. United States,* 523 U.S. 224, 228–29 (1998), that "the Sixth Amendment does not require the government to set forth in the indictment and prove beyond a reasonable doubt the fact of a prior conviction." *United States v. Mack*, 729 F.3d 594, 609 (6th Cir. 2013).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Defendant's conviction of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).